JOHN C. HUSTON v. RELING J. PETERSON.

No. 48.

1. WRITTEN WARRANTY—*Parol Evidence Inadmissible.* Evidence of verbal statements and representations made during the negotiations for the sale of a horse is not admissible to contradict or to enlarge a written warranty delivered at the time the sale is consummated, unless it is first shown that through fraud or mistake material parts of the warranty were omitted from the writing.

2. EVIDENCE—*Verdict.* The evidence in the case examined, and *held* not to sustain the verdict.

MEMORANDUM.—Error from Phillips district court; G. WEBB BERTRAM, judge. Action for breach of warranty brought by Reling J. Peterson against John C. Huston. Judgment for plaintiff. Defendant brings the case here. Reversed. The opinion, filed January 9, 1896, states the material facts.

*C. C. Flansburg*, and *G. A. Spaulding*, for plaintiff in error.

*R. Frank Stinson*, *C. A. Lewis*, and *G. W. Stinson*, for defendant in error.

The opinion of the court was delivered by

GARVER, J.: This was an action brought in the district court of Phillips county by Reling J. Peterson against John C. Huston to recover damages for an

alleged breach of warranty, made by the defendant to the plaintiff, upon the sale of a horse. The amended petition, upon which the case was tried, alleged that the defendant warranted that the horse was identical with one named "Red Murdock," with a recorded number 3997 in the Clydesdale stud-book; that he was perfect in health, and a sure foal-getter. A written bill of sale and warranty was given, at the time of the sale, that the horse was "Red Murdock," with a registered number 3997; that he had been imported by Huston, and that he was a foal-getter with proper care and handling. The plaintiff alleged that the full warranty, as made at the time of the sale, was not inserted in the writing, and was omitted therefrom by the fraud of the defendant. The horse was valued at about $1,000, the consideration given by Peterson being 80 acres of land in Phillips county. Before completing the sale Peterson saw, and had opportunity to examine, the horse. On the morning of July 20, 1890, having completed the purchase by delivering the deed to the land and receiving the bill of sale and warranty, he started with the horse for his home, distant about 25 miles. After going about eight miles the horse showed signs of sickness, refusing to eat or drink, and after going three or four miles further he lay down, and the next day died.

Two trials of this case have been had. The first, resulting in a verdict for $200 in favor of the plaintiff, was set aside by the court and a new trial granted. Upon the last trial there was a verdict and judgment for the plaintiff for $500. The first trial was had on a petition which set up the written warranty, given at the time of the purchase of the horse, as the contract of warranty made by the defendant. After the new trial was granted on the application of the defendant,

the plaintiff, by leave of court, filed a second amended petition, in which he relied upon a verbal warranty.

The plaintiff in error first alleges error in the ruling of the court permitting the second amended petition to be filed, it being contended that by the amendment the plaintiff was allowed to change his cause of action from one on contract to one on tort for fraud and deceit. We do not think the ruling of the court is subject to this objection. As we read the last petition, we do not understand that the pleader intended to change his case from an action on contract to an action for tort. There is still the allegation of the contract of warranty, the breach thereof, and the consequent damage. The allegation of fraud is made merely with reference to the contents of the writing, for the purpose of avoiding its legal effect. The amendment was such as the court, in its discretion, had a right to permit.

The principal contention is as to the evidence, the plaintiff in error insisting that the defendant in error failed to make out his case and that the verdict is without support in the evidence. After a careful examination of the record we think this contention must be sustained. The only evidence offered in support of the allegation of a warranty, independent of the writing, is the testimony of the plaintiff himself. He testified to conversations had during the negotiations ; that the horse was represented to be sound and a sure foal-getter ; that a written warranty to that effect was to be given ; that he could not read English, and that the defendant's agent, Pendarvis, read the writing over to him before he accepted it. We do not think the evidence discloses such facts as allow the admission of evidence tending to show a parol warranty. As a written warranty was given,

all previous conversation and statements of the parties, so far as intended to be warranties, must be presumed to have been included in the writing. There is no evidence whatever to sustain the allegations that the actual warranty was fraudulently omitted from the written instrument, or to show that, at the time the writing was delivered, it was intended by the parties to be other than it was. The plaintiff was accompanied by his son, and there was also present Pendarvis, his wife, and a son, from either of whom Peterson could have informed himself of the contents of the writing if he was not able to read it for himself. The undisputed evidence in the case shows that the bill of sale and warranty was read by Pendarvis to Mr. Peterson in the presence of the above-named parties. These persons were all examined as witnesses upon the trial, and by none of them, including the plaintiff, is there any claim that Pendarvis did not correctly read the instrument. How, then, can it be said that by fraud an instrument was imposed upon Peterson different from the one he supposed he was receiving? Under these circumstances, it must be conclusively presumed that the entire contract was reduced to writing, and that all previous negotiations of the parties were embraced therein. Consequently parol testimony was not admissible for the purpose of showing that the contract was different from that evidenced by the writing. (*Rodgers v. Perrault*, 41 Kan. 385 ; *Willard v. Ostrander*, 46 id. 591 ; *McMullen v. Carson*, 48 id. 263 ; *Breeding Ass'n v. Scott*, 53 id. 534.)

But if the warranty be taken in its broadest sense, as alleged by the plaintiff, as to the soundness of the horse, there is an entire failure of evidence tending to show that the horse was not sound at the time of the sale. The plaintiff himself says that the horse seemed

to be all right until they had traveled about eight miles on their way; that then, when put into a stable, the horse broke out into a severe sweat and appeared to be in great pain, showing a desire to lie down. The day is said to have been the hottest of the summer. That the horse had a severe attack of sickness is very evident, and it is reasonable to suppose it was caused by his becoming overheated, or otherwise afflicted, on the road. There is, at least, nothing tending to show any previous ailment or unsoundness of the horse. There is a like failure of evidence as to any other breaches of the contract of warranty.

The judgment will be reversed, and the case remanded for a new trial.

All the Judges concurring.